IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ZOE'S KITCHEN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN CASSIMUS | ) CIVIL ACTION NO. _____ |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Zoe's Kitchen, Inc. ("Zoës" or the "Plaintiff") hereby files its Original Verified Complaint against John Cassimus, ("Cassimus" or "Defendant"), and would show the Court as follows:

### I. PARTIES

1. Zoe's Kitchen, Inc., a Delaware corporation with a corporate headquarters is 5760 State Highway 121, Suite 250, Plano, Texas 75024.

2. On information and belief, Mr. John Cassimus is a citizen and resident of the State of Alabama and may be served with process by delivering a copy of this Complaint to him at his place of residence within the State of Alabama, including at 7012 Lake Run Dr., Vestavia, AL 35242, or wherever else he may be found.

### II. JURISDICTION AND VENUE

1. This is an action for false association, false advertising and trademark infringement arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (the "Lanham Act"), and for

trademark infringement and common law unfair competition under the laws of the State of Texas.

2. This Court can exercise personal jurisdiction over Defendant. Cassimus has purposefully availed himself of the benefits and protections of Texas law by committing the torts and violations set forth herein in the State of Texas.

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Zoe's claims for trademark infringement and common law unfair competition under the laws of the State of Texas.

4. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 because (1) Plaintiffs reside in Plano, Texas; and, (2) a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of the property that is the subject of the action is situated in this district.

### III. FACTS

5. Zoës is a high growth fast casual restaurant chain with more than 185 restaurant locations across 19 states. Most of Zoës' restaurants are located in the southeast portion of the United States, including more than 45 restaurants in Texas and more than 15 restaurants in Alabama.

6. Cassimus is the son of the founder of Zoës and served as CEO of the predecessor entity to Zoës until 2008. Following a separation in 2008, Cassimus had no other role as an employee, director or affiliate of Zoës. When Cassimus completed his employment with Zoës, Zoës had approximately 20 restaurant locations in several states.

7. Zoës completed its initial public offering (the "IPO") and its listing on the New York Stock Exchange ("NYSE") in April 2014. The IPO was among the most successful stock trading debuts in recent history of any of the publicly traded restaurant companies. Following its IPO and as of the date hereof, Zoës common stock trading price on the NYSE continues to be among the highest priced trading multiples among the restaurant chain stocks.

8. Among other press and public relations activities, the CEO of Zoës, has been featured on Jim Cramer's Mad Money show on a number of occasions. Jim Cramer has spoken favorably about, and recommended an investment in, Zoës based on a number of key factors including its strong brand within the restaurant chain sector.

9. Zoës has registered with the United States Patent and Trademark Office the "Zoe's Kitchen" tradename (see TM #2,783,558 – registration granted in 2003). Zoës has registered with the United States Patent and Trademark Office the "Zoës Kitchen" trademark (see TM #3,659,252; TM#3,766,828, and TM#3,766,722 – registrations granted in 2009-2010) (see **Exhibit A**) (collectively, the Zoës tradename and the trademark(s) shall be referred to as the "Zoës Registrations").

10. Zoës has expended significant time, capital, skills and resources developing and maintaining the Zoës Registrations. Given the IPO and other successes as a public company restaurant chain, the Zoës Registrations have achieved national fame and recognition and are regarded as a strong and uniquely recognizable tradename and trademark with national prominence among restaurant chains, the national media, the national investment community such as research analysts and mutual fund managers, and the customers in the markets in which Zoës operates.

11. Cassimus currently owns and operates three restaurant chains, Maki Fresh, Jensei and Miss Dots. Similar to Zoës, Maki Fresh is a fast casual restaurant concept and it has four restaurants in Alabama and Georgia and is in the process of developing additional locations.

12. Cassimus' new restaurant chains operate within the same casual restaurant business sector as Zoës and compete with Zoës. His restaurants also are based within the same competitive geographies as Zoës.

13. Cassimus is seeking to promote revenue growth, investor interest and press interest in these new restaurant chains.

14. Cassimus' new restaurant chains offer similarly priced casual food offerings as Zoës.

15. Early in the morning on June 22, 2016, Cassimus appeared on the "Executive Edge" segment of the CNBC program "Squawk Box." During this segment, Cassimus spoke on behalf of Zoës in a manner which indicated he still was an affiliate with or representative of the company or was otherwise speaking on behalf of the company. Cassimus repeatedly made such references as "we" and "our management team," all of which intentionally misrepresented his current lack of affiliation with Zoës.

16. During this CNBC interview, Cassimus engaged in remarks which do not reflect the statements, ideals, principles or opinions of Zoës. Many of such statements were either plainly false or inaccurate in nature. Several examples of these statements include Cassimus claiming that:

(a) McDonald's customers being typically lower income and less educated;

(b) Zoës would not be opening New York or California locations;

(c) An implication that Chipotle food can be "extremely dangerous" because it is not made fresh and that Zoës makes "everything from scratch";

(d) Zoës is not affected by the current minimum wage debate because Zoës pays an average wage of $10 to $12 per hour.

17. The above-referenced statements by Cassimus have distorted Cassimus' role with Zoës and has led to customer and marketplace confusion. Cassimus made the above-referenced statements for the purpose of promoting himself and his personal commercial gain in connection with his other restaurant concepts.

18. Management of Zoës have been informed by Cassimus' business partners and associates that, prior to the CNBC interview, such persons told Cassimus that is was not a good idea to participate in the CNBC regarding Zoës and that Cassimus ignored such recommendation and conducted such interview in any event.

19. Prior to Cassimus' appearance on CNBC, and until June 28, 2016, Cassimus' personal website, "www.johncassimus.com" contained a page entitled "John's Companies" whereby the Zoës trademarked logo was the first company listed in a more prominently displayed location of such website above the logos of Cassimus' other current business ventures (see **Exhibit B**), which is a screen shot from such website on June 27, 2016). Cassimus had no consent to use the Zoës logo on his website or elsewhere at any point in time.

20. In 2015 and 2016, leading up to the CNBC interview, Cassimus has repeatedly spoken at public university speaking engagements and elsewhere during which occasions, in the course of promoting his new restaurant chains, he intentionally led listeners to believe that he was affiliated with Zoës and was speaking on behalf of Zoës.

21. Cassimus engaged in the above-referenced activities for the purpose of personal pecuniary and commercial gain in connection with his other restaurant concepts.

22. Given the aforementioned activities by Cassimus, the public as well as investors were, and continue to be, confused by Cassimus' statements about his affiliation with Zoës and its relationship to his current restaurant chains' endeavors.

23. Cassimus' intentional misrepresentations and misstatements have tarnished the Zoës Registrations by diminishing their value among those persons who thought highly of the company prior to the date of such intentional misrepresentations and misstatements. For example, Zoës common stock price closed at $38.23 per share on June 21, 2016, and after the Cassimus CNBC interview, on June 22, 2016, the Zoës common stock reached a low of $37.35 and closed at $37.55, an approximate $10 million reduction in its market capitalization.

24. Beginning on June 22, 2016 and continuing to the date hereof, Zoës senior management, Board of Directors, public relations advisors and other agents and representatives have invested substantial time and resources towards minimizing the marketplace confusion created by Cassimus' intentional misrepresentations and misstatements. For example, on June 22, 2016, Zoës, with the assistance of its public relations firm based on New York City, prepared and issued a press release disclaiming Cassimus' misstatements and clarifying that he had no role with Zoës or authorization by Zoës to provide such statements (see **Exhibit C**).

25. In correspondence by and between the CEO of Zoës and Cassimus (see **Exhibit D**), Cassimus has confirmed that his foregoing actions are deliberate and intentional. Despite his representations to use "best effort" to assure that there is no confusion about his lack of affiliation with Zoës, on further inquiry, Cassimus has refused to do any of the following:

(a) stop making representations about Zoës without Zoës authorization;

(b) affirmatively state, when referring to Zoës, that he has not been affiliated with Zoës since 2008 and has no interactions with the senior management team of Zoës;

(c) abstain from making negative or harmful comments about Zoës; and

(d) stop contacting Zoës employees about company business, despite having competing restaurants.

26. At no time relevant herein has Zoës granted Cassimus permission or authority in any manner to speak on behalf of, or represent, Zoës, or to use the Zoës Registrations as indicated in the aforementioned paragraphs.

### IV. CAUSES OF ACTION

### COUNT I

### False Association under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)

27. Zoës adopts and incorporates by reference each of the allegations, facts, and averments contained in the preceding paragraphs as if set forth fully herein.

28. Cassimus' statements on the CNBC interview falsely represented Cassimus in a manner to suggest that Zoës supported, endorsed, sponsored or approved his statements.

29. The false representations were made in interstate commerce, as the CNBC segment is a nationwide platform to promote businesses. More, the false representations appear and continue to appear on the video segment on the internet.

30. The false representations made by Cassimus are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection and/or association of Cassimus and his businesses with Zoës and/or as to Zoës' approval or authorization of Cassimus' statements.

31. The false representations made by Cassimus were used in commercial advertising or promotion on CNBC and misrepresents the nature, characteristics and qualities of Zoës goods, services, or commercial activities.

32. The foregoing acts of Cassimus deceived, or had the capacity to deceive, a substantial segment of the listeners of CNBC regarding Zoës.

33. Cassimus' deception was material in that such listeners of his statements were under the false impression that he was affiliated with the strong Zoës brand and its recent growth and success, and such affiliation is likely to influence these listeners with respect to buying and potential investment decisions in both Cassimus' and Zoës restaurants.

34. Cassimus' actions constitute false association in violation of §43(a) of the Lanham Act.

35. Cassimus' intentional misrepresentations and deception have caused irreparable injury to Zoës, and will continue to harm Zoës unless enjoined.

36. Cassimus' actions have been willful and deliberate, justifying an award of attorneys' fees.

## COUNT II
### False Advertising under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)

37. Zoës adopts and incorporates by reference each of the allegations, facts, and averments contained in the preceding paragraphs as if set forth fully herein.

38. Cassimus' statements on the CNBC interview and use of the Zoës Registrations on his website falsely represented Cassimus in a manner to suggest that Zoës supported, endorsed or sponsored his statements and use of the Zoës Registrations..

39. The false representations were made in interstate commerce, as the CNBC segment is a nationwide platform to promote businesses, and the false representations appear and continue to appear on the CNBC video segment on the internet as well as Cassimus' website.

40. The false representations made by Cassimus are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection and/or association of Cassimus and his businesses with Zoës and/or as to Zoës' approval or authorization of Cassimus' statements.

41. The false representations made by Cassimus were used in commercial advertising or promotion on CNBC and Cassimus' website and misrepresent the nature, characteristics and qualities of Zoës goods, services, or commercial activities.

42. The foregoing acts of Cassimus deceived, or had the capacity to deceive, a substantial segment of the listeners of CNBC regarding Zoës as well as visitors to his website.

43. Cassimus' actions constitute false advertising in violation of §43(a) of the Lanham Act.

44. Cassimus' intentional misrepresentations and deception have caused irreparable injury to Zoës, and will continue to harm Zoës unless enjoined.

45. Cassimus' actions have been willful and deliberate, justifying an award of attorneys' fees.

### COUNT III

**Federal Trademark Infringement, Dilution and Unfair Competition**
**Violation of Sections 32 and 43(a), (c) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), (c)**

46. Zoës adopts and incorporates by reference each of the allegations, facts, and averments contained in the preceding paragraphs as if set forth fully herein.

47. Plaintiff is the owner of the Zoës Registrations, which are valid and subsisting.

48. The marks protected under the Zoës Registrations are distinctive and famous, and were distinctive and famous prior to the uses of such marks by Cassimus as complained of herein.

49. The Zoës Registrations and the goodwill of the businesses associated with Zoës in the United States are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public mind with the products and services of the highest quality and reputation.

50. Upon information and belief, without Zoës authorization or consent, and having knowledge of Zoës well-known and prior rights in the Zoës Registrations, Cassimus reproduced and copied the Zoës trademark on his website and repeatedly used the Zoës tradename for his own pecuniary and commercial gain in his many actions.

51. Cassimus engaged in such activities in connection with the sale, offering for sale, distribution, or advertising of goods and services provided by Cassimus' restaurant chains and in a manner whereby such use likely caused, and is continuing to cause, confusion, mistake or deception among customers, investors and the general public as to the source, sponsorship, affiliation, or approval of Cassimus' competing restaurant businesses.

52. Cassimus' use of the marks protected under the Zoës Registrations is likely to dilute and impair the distinctive nature and quality of such marks.

53. Cassimus' use of the marks protected under the Zoës Registrations is likely to harm the reputation of such marks by associating them with Cassimus and his competing restaurant businesses over which Zoës has no control.

54. Cassimus' acts as aforesaid were committed with knowledge that the reproduction and use of the Zoës Registrations was intended and likely to cause confusion, mistake or to deceive, and was intended and likely to dilute the marks protected under the Zoës Registrations.

55. Zoës has made a substantial investment of time, effort, and money in creating the Zoës Registrations, and Cassimus, at no cost to his companies, reproduced and copied, without the consent of Zoës, the Zoës Registrations in the course of Cassimus' business of promoting his other competing restaurant chains.

56. As a direct and proximate result of Cassimus' infringement, Zoës has suffered and will continue to suffer damages. Cassimus is inappropriately profiting from his violations of Zoës trademark and tradename rights under the Lanham Act.

57. Zoës is entitled to recover treble damages due to Cassimus' willful and intentional infringement and dilution.

58. Zoës has no adequate remedy at law and, if Cassimus' activities are not enjoined, Zoës will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT IV

### Texas Trademark Infringement
### Violation of Tex. Bus. & Com. Code §16.102, §16.103 & 16.104 (c)

59. Zoës adopts and incorporates by reference each of the allegations, facts, and averments contained in the preceding paragraphs as if set forth fully herein.

60. Plaintiff is the owner of the Zoës Registrations.

61. The Zoës Registrations and the goodwill of the businesses associated with Zoës in the United States are of great and incalculable value, are highly distinctive and arbitrary, and

have become universally associated in the public mind with the products and services of the highest quality and reputation.

62. Upon information and belief, without Zoës authorization or consent, and having knowledge of Zoës well-known and prior rights in the Zoës Registrations, Cassimus reproduced and copied the Zoës trademark on his website, accessible and available to Texas residents, and repeatedly used the Zoës tradename for his own pecuniary and commercial gain in his many actions.

63. Such reproduction and copying occurred without the consent of Zoës and occurred in the course of Cassimus' business of promoting his other restaurant chains.

64. Cassimus engaged in such activities in connection with the sale, offering for sale, distribution, or advertising of goods and services provided by Cassimus' restaurants and in a manner whereby such use likely caused, and is continuing to cause, confusion, mistake or deception among customers, investors and the general public as to the source, sponsorship, affiliation, or approval of Cassimus' competing restaurant businesses.

65. Cassimus' acts as aforesaid were committed with knowledge that the reproduction and use of the marks protected under the Zoës Registrations was intended and likely to cause confusion, mistake or to deceive.

66. As a direct and proximate result of Cassimus' infringement, Zoës has suffered and will continue to suffer damages. Cassimus is inappropriately profiting from his violations of Zoës trademark and tradename rights.

67. In addition to other remedies set forth herein, Zoës seeks an award in an amount not to exceed three times the amount of profits made by Cassimus and damages sustained by

Zoës due to Cassimus' actions, and an award of reasonable attorney's fees to the prevailing party under Tex. Bus. & Com. Code §16.104 (c).

## COUNT V
### Common Law Claim for Unfair Competition and Misappropriation

68. Zoës adopts and incorporates by reference each of the allegations, facts, and averments contained in the preceding paragraphs as if set forth fully herein.

69. Zoës has made a substantial investment of time, effort, and money in creating the Zoës Registrations, and Cassimus, at no cost to his companies, reproduced and copied, without the consent of Zoës, the Zoës Registrations in the course of Cassimus' business of promoting his other competing restaurant chains.

70. Cassimus operates restaurant chains that sell products and provides services in competition with Zoës and has incurred none of the burden or expense associated with creating and maintaining the Zoës Registrations.

71. Cassimus' unfair and deceptive actions have caused mistake or confusion, or are likely to cause mistake or confusion in the mind of the public about the affiliation between Zoës and Cassimus' restaurants.

72. Zoës and its brand have been commercially damaged by Cassimus' actions.

### V. CONDITIONS PRECEDENT

73. All conditions precedent to this action and Zoës recovery have occurred, have been performed, or have been waived.

## VI. JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

## VII. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays this Court will enter judgment against Defendant as follows:

A. In favor of Zoës and against Cassimus on all of Zoës' claims;

B. That Cassimus be enjoined and restrained permanently from

    a. disseminating, creating, displaying or otherwise causing to be displayed the statements complained of herein;

    b. unfairly competing with Zoës in any manner whatsoever; and

    c. continuing to wrongfully use the Zoës Registrations.

C. That Cassimus account for and pay over to Zoës damages in an amount to be determined by the trier of facts, plus interest, treble damages, attorney's fees, costs of Court and such other damages related to which Zoës is entitled.

Plaintiff further prays this Court will enter judgment against the Defendant for compensatory and punitive damages, plus interest and costs, attorneys' fees, and further relief as the Court may deem just and proper.

Dated: July 11, 2016

                                            Respectfully submitted,

                                            __/s/ *Bina B. Palnitkar*_____
                                            Bina B. Palnitkar
                                            State Bar No. 24070378
                                            palnitkarb@gtlaw.com

                                            **GREENBERG TRAURIG, LLP**
                                            2200 Ross Avenue, Suite 5200
                                            Dallas, Texas 75201
                                            Telephone:  214.665.3600
                                            Facsimile:   214.665.3601

                                            **COUNSEL FOR PLAINTIFF**
                                            **ZOES KITCHEN, INC.**